# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD PATRICK MCCRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 4:17CV2558 HEA |
| | ) | |
| IVOR GARLICK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, [Doc. No. 25]. The Motion is unopposed. For the reasons set forth below, Defendants' Motion is granted.

## Facts and Background

Plaintiff alleges that Defendants violated his Eighth Amendment rights through deliberate indifference to his serious medical needs while he was an inmate at the St. Louis City Justice Center ("SLCJC").

Defendants have, in accordance with the Court's Local Rules, submitted a Statement of Uncontroverted Material Facts. Plaintiff failed to respond to Defendants' facts. Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7-401(E) of this Court's Local Rules, Defendants' facts are deemed admitted. Local Rule 7-401(E) provides:

Rule 7 - 4.01 Motions and Memoranda.

(E) A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

The undisputed facts are as follows:

Plaintiff was previously an inmate at the SLCJC and was released in early August 2018.

Dr. Fe Fuentes is the Medical Director at the SLCJC.

Dr. Ivor Garlick was the Regional Medical Director for Corizon. As Regional Medical Director, Dr. Garlick did not provide medical treatment to patients. Rather, he reviewed consultation requests for specialized services for medical necessity. Where there was an alternative treatment or diagnostic plan to the specialized services requested and the alternative would provide the equivalent therapeutic or diagnostic result, Dr. Garlick may have suggested the alternative.

On April 6, 2017, Plaintiff injured his left knee and was sent to the St. Louis University Hospital emergency room for evaluation, where he was diagnosed with a patellar dislocation. A patellar dislocation occurs when the patella (or kneecap)

slips out of its normal position. The initial treatment for patellar dislocation is relocation of the kneecap back into its normal position and immobilization, followed by slow rehabilitation. Conservative treatment for a patellar dislocation involves immobilization of the knee joint, physical therapy to increase strength and flexibility, and pain medications. If a patient does not respond well to conservative treatment, surgery may be required to repair significant bone or ligament damage.

Dr. Fuentes saw Plaintiff upon his return to the SLCJC and ordered ibuprofen, a bottom bunk, and a bottom tier for his knee dislocation. On April 7, 2017, Dr. Fuentes also requested an orthopedic evaluation for Plaintiff and noted that he had a knee brace. She also prescribed Tylenol #4, a narcotic pain medication, for Plaintiff. Plaintiff also had an x-ray which showed degenerative changes but no acute fracture or dislocation. On April 11, 2017, Dr. Garlick approved Dr. Fuentes' request.

On April 25, 2017, Plaintiff was seen at the SLUH orthopedic clinic in follow-up and was issued a short knee brace. The orthopedist recommended physical therapy and a follow-up appointment. Dr. Fuentes requested physical therapy and a follow-up orthopedic evaluation for Plaintiff. Dr. Garlick approved the request.

On May 9, 2017, Dr. Fuentes ordered Tramadol, a narcotic-like pain medication, for Plaintiff.

On June 6, 2017, Physical Therapist Colleen Long saw Plaintiff. She recommended an orthopedic follow-up for surgical stabilization. On June 13, 2017, an orthopedist advised ordering an MRI and CT scan of Plaintiff's left knee. Dr. Fuentes requested an MRI and CT scan of Plaintiff's left knee, stating that Plaintiff had dislocated his left knee, which was unstable. Dr. Fuentes also noted that he had undergone physical therapy, had a left knee brace, and was treated with Naprosyn. Dr. Fuentes further noted that Plaintiff was able to perform his activities of daily living ("ADLs").

On June 23, 2017, Dr. Garlick noted that he believed that conservative treatment was appropriate for Plaintiff's patella because he was able to perform his ADLs and was not in severe pain. He approved an orthopedic consultation to determine whether conservative treatment was the correct approach for this patient. Dr. Garlick was not aware that the orthopedist had recommended the MRI and CT scan; if he had been made aware of the recommendation, he would have approved the request.

On July 27, 2017, Dr. Fuentes saw Plaintiff for complaints of continued knee pain. Dr. Fuentes ordered Tylenol #4 for his knee and an x-ray. The x-ray showed mild degenerative changes but no fracture or dislocation.

On August 1, 2017, Dr. Chris Kim, an orthopedist, saw Plaintiff, and recommended a CT scan and an MRI. Dr. Fuentes noted that she would direct a

[4]

nurse to send a copy of the orthopedist's notes to Dr. Garlick to approve the MRI. Dr. Fuentes believed that the records would be transmitted to Dr. Garlick upon receipt. She is not aware of whether the nurse sent the records to Dr. Garlick. Dr. Garlick does not recall receiving or reviewing these notes, and Plaintiff's medical records do not reflect that a consultation request for an MRI or CT scan was submitted in or around August 2017. If Dr. Garlick had been made aware of Dr. Kim's recommendations, he would have approved an MRI or CT scan.

Dr. Fuentes renewed Plaintiff's Tylenol #4 prescription on August 29, 2017, and prescribed ibuprofen on September 21, 2017. On September 29, 2017, Dr. Fuentes saw Plaintiff for complaints of left knee pain. She ordered Tylenol #4 and an x-ray. The x-ray, taken on October 4, 2017, showed no fracture or dislocation and no significant changes from Plaintiff's prior x-ray. On October 10, 2017, Dr. Fuentes discussed Plaintiff's x-ray results with him and renewed Tylenol #4. On November 2 and November 10, 2017, Dr. Fuentes renewed Tylenol #4. On November 22, 2017, Dr. Fuentes ordered Naproxen.

On December 21, 2017, Dr. Fuentes saw Plaintiff for complaints of persistent knee pain. (Id. ¶ 21). She noted that his patella appeared to be dislocated but could be positioned in place. Dr. Fuentes noted that she would request authorization for an MRI of Plaintiff's left knee. She provided an ACE bandage and advised Plaintiff to use the bandage and brace. Due to an inadvertent oversight,

a consultation request for an MRI was not submitted in or around December 21, 2017.

Plaintiff's Tylenol #4 prescription was renewed on January 22, 2018, January 25, 2018, and February 7, 2018. Dr. Fuentes ordered Naproxen for Plaintiff on February 20, 2018. When Plaintiff complained that it caused blood in his stool, Dr. Fuentes ordered Tylenol #4. Dr. Fuentes renewed it on March 5, 2018.

On March 19, 2018, Dr. Fuentes renewed Tylenol #4 and submitted a request for an MRI of Plaintiff's left knee. The request was approved by Dr. Glenda Newell-Harris, the acting RMD. On April 2, 2018, Dr. Fuentes renewed Tylenol #4.

On April 3, 2018, Dr. Fuentes saw Plaintiff and noted that an MRI had been approved and that he would be scheduled for the procedure. Dr. Fuentes also ordered an extra mattress for Plaintiff. On April 30, 2018, Dr. Fuentes requested an orthopedics consultation in follow-up to Plaintiff's MRI. Dr. Garlick approved the request.

Plaintiff's Tylenol #4 prescription was renewed on April 18, 2018, May 8, 2018, and May 21, 2018. On May 31, 2018, Dr. Fuentes saw Plaintiff, who had seen an orthopedist on May 29, 2018. The orthopedist recommended a CT scan of Plaintiff's left knee. Dr. Fuentes submitted a request for an urgent CT scan of

Plaintiff's knee and a follow-up appointment with the orthopedist. Dr. Garlick approved the request.

On June 13, 2018, Dr. Fuentes saw Plaintiff and noted that a CT scan and orthopedist appointment were scheduled. On June 8 and June 19, 2018, Dr. Fuentes renewed Tylenol #4.

On June 26, 2018, Plaintiff returned from an evaluation with an orthopedist and reported that the orthopedist advised surgery. Dr. Fuentes requested an arthroscopy of Plaintiff's left knee on June 28, 2018, which Dr. Garlick approved.

Plaintiff underwent left knee arthroscopy in late July 2018, and was released in early August 2018.

Plaintiff was provided medically appropriate treatment for his left knee injury. The care he received was within the standard of care exercised by like providers in similar circumstances. The care Plaintiff was provided also did not cause him any injury or harm.

Plaintiff was not harmed by any perceived delay in receiving an MRI or left knee surgery. In particular, the course of Plaintiff's treatment, including his left knee surgery or recovery from that surgery, was not affected by any perceived delay. Further, Plaintiff exhibited no significant left knee deterioration between the date of his injury and the date of his surgery.

Dr. Garlick's recommendations pertaining to the treatment of Plaintiff's left knee were not based on cost. Neither Dr. Fuentes nor Dr. Garlick denied Plaintiff necessary medical treatment for any medical concerns or symptoms, nor did they disregard or otherwise ignore any of his medical needs. There is no evidence that Dr. Fuentes or Dr. Garlick communicated with the Missouri Protection Advocacy regarding Plaintiff.

## Summary Judgment Standard

The Eighth Circuit has articulated the appropriate standard for consideration of motions for summary judgment, as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir. 2011) (*en banc*) (internal citations and quotation marks omitted). "Although the burden of

demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No. 34,* 528 F.3d 1074, 1078–79 (8th Cir. 2008) (cited case omitted). With this standard in mind, the Court accepts the above listed facts as true for purposes of resolving the parties' motions for summary judgment.

Plaintiff alleges that Dr. Fuentes failed to follow the recommendations of the bone specialist. He alleges Dr. Fuentes told him that Dr. Garlick would not approve an MRI due to cost, and because it would lead to surgery. Essentially, Plaintiff's claim is that Defendants were deliberately indifferent to plaintiff's serious medical needs. Defendant also claims that Drs. Fuentes and Garlick "falsified [his] medical records to the Missouri Protection Advocacy."

The Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from "deliberate indifference to serious medical needs." *Gregoire v. Class,* 236 F.3d 413, 417 (8th Cir. 2000).

In a deprivation of medical care case, the inmate must show (1) an objectively serious medical need; and (2) the defendants actually knew of the medical need but were deliberately indifferent to it. *See Grayson v. Ross,* 454 F.3d 802, 808–09 (8th Cir. 2006). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious

that even a 'layperson would easily recognize the necessity for a doctor's attention.'" *Jones v. Minnesota Dep't of Corrs.,* 512 F.3d 478, 483 (8th Cir. 2008). *See also Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997). "'To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk.' Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it.'" *Vaughn v. Greene Cnty., Ark.,* 438 F.3d 845, 850 (8th Cir. 2006) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). The determination that prison officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious. *See Farmer,* 511 U.S. at 842; *Jones,* 512 F.3d at 483. If prison officials have actual knowledge of a serious medical need, and fail to take reasonable measures to address it, they may be held liable for deliberate indifference. *See Farmer* 511 U.S. at 847. That said, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Pietrafeso v. Lawrence Cnty., S.D.,* 452 F.3d 978, 983 (8th Cir. 2006) (quoting *Gibson v. Weber,* 433 F.3d 642, 646 (8th Cir. 2006)).

When an inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.'"

*Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir. 1995), *abrogation on other grounds recognized by Reece v. Groose,* 60 F.3d 487, 492 (8th Cir. 1995) (quoting *Hill v. Dekalb Regional Youth Det. Ctr.,* 40 F.3d 1176, 1188 (11th Cir. 1994)). Therefore, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir.1997) (quoting *Hill,* 40 F.3d at 1188). To prevail on a claim that a delay in medical care constituted cruel and unusual punishment, an inmate must show both that: (1) the deprivation alleged was objectively serious; and (2) the prison official was deliberately indifferent to the inmate's health or safety. *Id.* When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the "objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.'" *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005) (affirming the district court's grant of defendants' motion for summary judgment because plaintiff failed to offer evidence establishing any delay in treatment had a detrimental effect).

Allegations of medical malpractice, inadvertent failure to provide adequate medical care, or simple negligence do not amount to a constitutional violation. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Popoalii v. Correctional Med. Servs.,* 512 F.3d 488, 499 (8th Cir. 2008); *Smith v. Clarke,* 458 F.3d 720, 724 (8th Cir.

2006). Rather, the standard is met when the complainant establishes that the official "intentionally den[ied] or delay[ed] access to medical care, or intentionally interfer[ed] with treatment or medication that has been prescribed." *Vaughan v. Lacey,* 49 F.3d 1344, 1346 (8th Cir.1995). Furthermore, "prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment," since prisoners do not have a right to any particular course of medical care. *Long v. Nix,* 86 F.3d 761, 765 (8th Cir.1996) (citing *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir.1994)); *Taylor v. Turner,* 884 F.2d 1088, 1090 (8th Cir.1989). "[N]othing in the Eighth Amendment prevents prison doctors from exercising their independent professional judgment." *Long,* 86 F.3d at 765. Accordingly, under Eighth Circuit law, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii,* 512 F.3d at 499 (*quoting Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir.1995)).

## Discussion

For purposes of summary judgment, Defendants do not dispute that Plaintiff had a serious medical need. What is at issue is whether Defendants were deliberately indifferent to Plaintiff's medical condition.

The undisputed facts in this case show that plaintiff was assessed and treated on a regular basis for his left knee injury. Plaintiff was examined by Dr. Fuentes

on a regular basis. Dr. Fuentes ordered evaluations with specialists, physical therapy, pain medication, bottom bunk detail, an extra mattress, and diagnostic testing, including x-rays, an MRI, and a CT scan. Although two requests for an MRI from Dr. Fuentes were inadvertently not made or did not reach Dr. Garlick, "simple negligence [does] not amount to a constitutional violation." *Estelle v. Gamble,* 429 U.S. at 106.

The undisputed facts show that Dr. Garlick did not deny any requests based on cost. He did not deny an MRI, but, by some oversight he was not aware that the orthopedist had recommended an MRI and CT scan. Although Dr. Garlick believed that a conservative course of treatment was appropriate based on Plaintiff's ability to perform ADLs and lack of severe pain, he still approved orthopedic evaluations to determine the best course of treatment. Plaintiff's "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii,* 512 F.3d at 499.

Plaintiff has failed to provide any medical evidence of a detrimental effect due to the delay in surgery. Additionally, he has provided no evidence that the delay was intentional or the result of deliberate indifference. The delay therefore cannot rise to the level of an Eighth Amendment violation.

Finally, Plaintiff's allegation that Defendants falsified his medical records to Missouri Protection and Advocacy services is unsupported by the undisputed facts,

which state that there is no record of such communication between Defendants and Missouri Protections and Advocacy. In addition, it is unclear what cause of action is alleged or what kind relief Plaintiff is requesting with this statement.

Since he filed this suit, Plaintiff has undergone surgery on his left knee. Surgery was performed while he was in the custody of SLCJC; he was released shortly after. Plaintiff has not established that there is a triable issue as to whether Defendants deliberately disregarded his serious medical needs. There is nothing in the record to establish that Defendants violated Plaintiff's Eighth Amendment rights. Summary judgment is, therefore, granted in favor of the defendants.

## Conclusion

Based upon the foregoing analysis, Defendants are entitled to judgment as a matter of law. The undisputed material facts establish that Defendants have not been deliberately indifferent to Plaintiff's serious medical needs. As such, Defendants' Motion for Summary Judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 25], is **GRANTED**.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 13th day of August, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE